LEVI S. CORRELL, Appellee, *vs.* HUGH M. GREIDER, Appellant.

*Opinion filed April 19, 1913—Rehearing denied June 4, 1913.*

1. PLEADING—*when a bill to reform a deed sufficiently alleges mutual mistake.* Where a bill to reform a deed sets out the agreement of all the parties that the deed should be so drawn as to convey a base fee to the complainant's wife conditioned upon her surviving the complainant, an allegation that by the mistake of the scrivener the agreement was not incorporated in the deed is broad enough to permit proof of the mistake of fact and that it was mutual and common to all the parties.

2. STATUTE OF FRAUDS—*Statute of Frauds is no defense to bill to reform a deed.* The Statute of Frauds cannot be pleaded as a defense to a bill to reform a deed for a mutual mistake of fact.

3. MISTAKE—*what does not prove that there was no mistake in deed.* The fact that the person to whom a deed was made conveying the fee executed a will, which was probated, disposing of the property as her own, does not prove that there was no mutual mistake in drawing the deed to convey a fee simple absolute instead of a base fee conditioned upon her outliving her husband, where it appears the wife was not of sound mind when she made the will.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

THOMAS L. JARRETT, for appellant.

ALBERT SALZENSTEIN, and T. J. CONDON, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On August 3, 1905, appellee, Levi S. Correll, filed his bill in the circuit court of Sangamon county for the correction of a deed. The bill alleged that on January 19, 1900, appellee purchased from Samuel D. Scholes a farm consisting of eighty-seven acres, in Sangamon county; that under the terms of purchase appellee was to pay $7423.30 for said real estate, of which $4023.30 was paid in cash and a note and mortgage given to secure the balance; that

it was agreed between appellee and Scholes that the latter should convey the premises to the wife of appellee, Annie E. Correll, and in the event 'that she pre-deceased him the premises to go to him, and that this was to be so written in the deed; that appellee made the cash payment out of his own money and estate and also subsequently paid the mortgage indebtedness; that through some mistake or oversight of the scrivener, unknown to Scholes and appellee, the deed was so drawn as to convey the premises to said Annie E. Correll in fee simple, instead of conveying to her a base or qualified fee subject to being defeated upon her dying before appellee; that neither appellee nor said Scholes discovered this mistake until after the death of said Annie E. Correll, which occurred on October 16, 1904; that Annie E. Correll left surviving her as her only heirs, appellee, her husband, and appellant, Hugh M. Greider, a son of a deceased sister; that she died testate, and her last will and testament has been duly admitted to probate in the probate court of Sangamon county. By her will, which was dated October 14, 1904, and is set out in the bill *in hæc verba,* Mrs. Correll bequeathed certain items of personal property to various persons and devised to appellee a life estate in said real estate, and directed that at his death the same should be sold and the proceeds distributed, $2500 to appellant, $1000 to another devisee named, and the balance to be divided equally among the brothers and sisters of appellee or their bodily heirs. The bill then alleged that until after the probate of said will appellee had always been under the impression and believed that the deed to said premises had been executed according to the agreement between himself and Scholes, and that he then applied to Scholes for a correction thereof, but on account of the death of his said wife and the execution of her will Scholes refused to correct the deed except through court proceedings; that since the death of his wife and the probate of her will all of the brothers and sisters of appellee, and the

bodily heirs of such as are deceased, except Cornelius Correll, a brother, have made and delivered to appellee quitclaim deeds to said real estate. The bill then alleged the non-residence of appellant and Cornelius Correll, both of whom, together with Scholes and wife and the executor of the will, were made defendants. The bill prayed that the mistake in the deed from Scholes and wife be corrected in accordance with the original agreement and that appellee be declared to be the legal and equitable owner of said lands. All of the defendants except appellant and Cornelius Correll were personally served, and an attempt was made to obtain jurisdiction of them by publication. None of the defendants appeared to answer the bill and they were all defaulted. The cause was referred to the master, who reported recommending a decree in accordance with the prayer of the bill, and on October 3, 1905, a decree was entered granting the relief sought. Thereafter appellant sued out a writ of error from this court and the decree was reversed and the cause remanded on the ground that the affidavit upon which service by publication was had upon the appellant was so defective that the court did not obtain jurisdiction of his person. (*Correll* v. *Greider,* 245 Ill. 378.) After the cause had been re-docketed in the circuit court appellant answered, denying that appellee purchased the land in question from Scholes or paid for the same out of his own money and averring that the land was purchased and paid for by Annie E. Correll. He also denied that under the terms of the agreement the deed was to contain a provision that in the event Annie E. Correll pre-deceased her husband the land was to go to the latter or that any mistake was made by the scrivener in drawing the deed. The other allegations of the bill were either admitted or not controverted. The cause was referred to the master upon the issues made on the original bill. On February 24, 1912, the master reported, finding that at the time of the execution and delivery of the deed there was no

258 – 31

agreement or understanding that in the event Annie E. Correll should pre-decease her husband the premises were to go to him nor that such agreement should be written in the deed, and that there was no mistake or oversight on the part of the scrivener in drawing the deed, but that the instrument was drawn and was executed and delivered in accordance with the agreement and understanding of all the parties thereto. The master recommended that a decree be entered dismissing the bill for want of equity. Appellee filed objections to the master's report, which were overruled, and upon the filing of the report in court he filed exceptions thereto. The court sustained the exceptions and entered a decree in accordance with the prayer of the bill, by which the deed was reformed by adding after the words, "convey and warrant to Anna Correll, of the county of Sangamon and State of Illinois," the following: "For her life, with remainder to her husband, Levi S. Correll, in case he survives her, otherwise to be hers absolutely," and it was directed that such correction should relate back to the date of the deed. It was also decreed that the defendants to the bill, including appellant, and all persons claiming under them since the commencement of the suit, should be forever barred and foreclosed of all rights and interests in the premises.

It is first contended that the bill is deficient in that it fails to allege that the mistake was mutual as between the grantor and the grantee in the deed, the contention being that it is necessary to allege that there was a mistake on the part of Annie E. Correll as well as the other parties to the transaction. The bill sets up the alleged agreement and alleges that through the mistake of the scrivener this agreement was not embodied in the deed. While it is true that the mistake must be mutual and common to all the parties, this allegation of the bill is broad enough to include such a mistake, and under it proof could be made of the mistake and of the fact that it was mutual and common to all the

parties. (*Koch* v. *Streuter*, 218 Ill. 546.) In any event, by his answer appellant put directly in issue the question whether there was any mistake on the part of Annie E. Correll, in which answer he denies that there was any such mistake on her part and alleges that she was the purchaser and that the deed was made according to the contract.

The court by its decree found that appellee bargained for and bought of Scholes the real estate in question and paid for the same out of his own funds. This finding is amply sustained by the evidence. The only witnesses who testified directly as to what the agreement was in reference to the purchase of this land were the scrivener and Scholes. In addition to their testimony four witnesses testified to statements which had been made by Mrs. Correll shortly after the deed had been executed, as to the respective interests of her husband and herself in the property. The scrivener had been a witness on behalf of appellee before the master on the first reference. At the second hearing he testified on behalf of appellant. He admitted that his memory as to the facts involved.was not as good at the time of the second hearing as it was when he first testified. On the cross-examination of this witness the testimony which he had given on the first hearing was disclosed, and while he now testifies that he drew the deed as he was directed and has no recollection that appellee directed him to make it otherwise, the substance of his testimony is that he still remembers that Mrs. Correll was to be protected for life. On the former hearing he testified that at first it was intended to make the deed to appellee but afterwards he was directed to make it to Mrs. Correll in order to protect her for her lifetime, and that he knew from the conversation which he had with appellee and Mrs. Correll that it was Mrs. Correll's intention and idea that the doctor (the appellee) also should be protected. Scholes testified that he had several conversations with appellee, one or two of which occurred in the presence of Mrs. Correll; that appellee said

that he wanted to secure his wife during her lifetime and wanted the deed made in such a way that she would have the benefit of it so long as she lived and in case of his death she would have the property.

A neighbor of the Corrells, who had known appellee since 1876, testified that the Corrells stayed all night at his home the day before they moved to the farm, and on that occasion, in discussing the purchase of the farm, Mrs. Correll told him that her husband had paid for the land and that "we have got the deed now; whenever one dies it falls to the other one." Another witness testified that he was acquainted with both appellee and his wife, and that he worked for appellee on the farm from October 7, 1901, through the crop season of 1902; that on numerous occasions when appellee, who was addicted to the excessive use of intoxicating liquors, was drinking, witness came to the residence and helped Mrs. Correll about the house; that on one of those occasions she told him that while appellee's money had bought the place he could never destroy it as long as she lived; that if he died first nobody could take the place, and if she died first then it went back to him. Another witness testified that he had been acquainted with appellee for more than twenty years and was also acquainted with Mrs. Correll; that he stayed with the Corrells about the time they purchased the land in question, and while he was there Mrs. Correll stated to him, in response to a remark that appellee would not be able to go on the farm if he did not quit drinking, that if appellee died she would have plenty of money, and if she should die appellee would have the farm. Another witness testified that he worked for appellee on the farm in 1902, during which time he had a conversation with her in relation to the farm, in which she said the place had been deeded to her for her lifetime, and if she died first it went back to the doctor and if he died first it was hers.

There is no evidence in this record which contradicts any of this testimony except the will of Mrs. Correll, and it is contended by appellant that the fact that Mrs. Correll regarded this real estate as her absolute property and disposed of it as such by her will is a complete refutation of the claim that there was a mistake on her part in the execution of the deed in question. It is not necessary to enter into a discussion of the effect of the making of the will in this regard, as there is sufficient evidence standing uncontradicted to warrant the court in ignoring the will entirely, so far as its execution might affect the question whether a mistake had been made in the execution of the deed. It will be remembered that the will was executed two days before the death of Mrs. Correll. Her two attending physicians were called, and both testified that at the time the will was executed her mental condition was unsound as a result of the disease from which she was suffering. One of them testified that at that time she was not mentally capable, in his judgment, of understanding anything about the property she owned; . that her disease was of such a character that the mind is usually affected in its last stages, and that he found that to be true in her case.

This was all of the evidence introduced by either party on the question of mistake. We think the conclusion is inevitable therefrom that the parties intended to have the deed drawn in accordance with the corrections made by the decree. The court properly sustained the exceptions to the master's report and entered a decree in accordance with the prayer of the bill.

Appellant filed a cross-bill, in which he alleged that on April 2, 1906, appellee conveyed the real estate in controversy and had delivered possession of the same to the purchaser, and that by the filing of this bill and the making of such conveyance he had elected to renounce and repudiate the provisions of the will of Mrs. Correll made in his

behalf and had thereby forfeited all rights under the will, and by reason thereof his life estate in the premises had become extinguished and the time for the sale of the remainder and the distribution of the proceeds had become accelerated, and that appellant is now entitled to the $2500 legacy given him by said will. The cross-bill prayed for the appointment of a trustee to carry out the provisions of the will. A demurrer to the cross-bill was sustained, and appellant assigns that action of the court as error. In the view we have taken of the merits of the case it is unnecessary to consider this assignment.

The court denied appellant leave to amend his answer by setting up the Statute of Frauds as a defense, and he also complains of this as error. It was charged in the bill that at the time the instrument was executed it was mutually intended by the parties to have incorporated therein a certain provision, but that by mutual mistake a different provision was inserted. The Statute of Frauds cannot be pleaded as a matter of defense to a bill to reform a deed on account of mutual mistake, (*Mercantile Ins. Co.* v. *Jaynes,* 87 Ill. 199,) and it was not error to deny leave to amend the answer in this particular.

The decree of the circuit court is affirmed.

*Decree affirmed.*