William D. Boyle, Appellant, v. Veterans Hauling Line, John A. Murphy and Joseph Pantaleo, Individually and d/b/a Veterans Hauling Line, Appellees.

Gen. No. 48,096.

First District, Third Division.
February 1, 1961.
Rehearing denied February 23, 1961.

236

Masters & Schwartz, and Canel & Canel, of Chicago (Jay A. Canel and Charles I. Calisoff, of counsel) for appellant.

Irving Goodman and William Allen Nathenson, of Chicago, for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A default judgment was entered in the Municipal Court of Chicago in favor of William D. Boyle, hereafter referred to as the plaintiff, against Veterans Hauling Line, John A. Murphy, and Joseph Pantaleo, individually and doing business as Veterans Hauling Line, hereafter referred to as defendants. More than thirty days after the judgment was entered the trial court vacated the judgment on a petition filed under the provisions of section 72 of rule 1 of the Municipal Court of Chicago.

On October 19, 1959 the plaintiff filed in the Municipal Court of Chicago a suit growing out of an auto-

mobile accident. The statement of claim sought recovery for property damage and personal injury. On the return date, November 9th, the defendants having failed to file their appearance, a default was entered against each of them, and on November 30, 1959 the court, after a hearing, entered judgment against the defendants for $5,000. On January 13, 1960 the defendants filed a petition to vacate the judgment, which petition was supported by the affidavit of defendant Pantaleo. On January 29, 1960 the trial judge vacated the judgment, from which order this appeal is taken.

The theory of the plaintiff set out in his brief is that defendants' petition to vacate the judgment and supporting affidavit were insufficient inasmuch as "in their motion and affidavit, the defendants allege they were diligent and that they had a meritorious defense to the plaintiff's complaint. No facts were pleaded to support these allegations. They were mere conclusions of the pleader and as such, were insufficient in law to authorize the court to vacate the judgment."

██ Section 72 of rule 1 of the Municipal Court of Chicago is almost identical with section 72 of the Practice Act, and the procedure under the Municipal Court rule is governed by the same rules of law applicable to section 72 of the Practice Act. Frederick v. Maggio, 23 Ill.App.2d 292, 162 N.E.2d 590. Section 72 of the Practice Act, as adopted in 1933, in regard to the writ of error coram nobis was substantially the same as section 89 of the former Practice Act, which had provided only for a motion to replace the writ of error coram nobis. Our courts held that the motion brought under section 89 of the Practice Act was in its nature the commencement of a new suit, upon which issues must be made up, and there must be a finding and a judgment. Smyth v. Fargo, 307

Ill. 300, 304, 138 N.E. 610. Any question as to the sufficiency of the motion could only be raised by a demurrer, and if a plea on the merits was filed to the motion, all questions as to its sufficiency were thereby waived. Smyth v. Fargo, supra. It was held that section 21 of the Municipal Court Act, which is supplanted by section 72 of rule 1 of the Municipal Court, was governed by the same procedure. People v. Green, 355 Ill. 468, 474, 189 N.E. 500; Central Bond & Mortgage Co. v. Roeser, 323 Ill. 90, 95, 153 N.E. 732. It was further held that the question of the sufficiency of the motion could not be raised on review except where the question of its sufficiency had been properly preserved in the trial court. Smyth v. Fargo, supra. After the adoption of the Practice Act of 1933 the same procedural rules were considered applicable thereto. Calkin v. Roberts Park Fire Protection Dist., 402 Ill. 579, 84 N.E.2d 841 (1949); McSwain v. Nash, 331 Ill. App. 175, 72 N.E.2d 717 (Abst., 1947); and People v. Miles, 292 Ill. App. 430, 432, 11 N.E.2d 621 (1937).

When the Civil Practice Act was revised in 1955, section 72 proposed by the Joint Committee of the Illinois State and Chicago Bar Associations provided: "The petition shall be filed in the case as part of the same proceeding in which the order, judgment or decree was entered." In the comments referring to that section the committee stated that the purpose of the change in the Act was designed to make it clear that the petition is not a new action but a continuation of the prior proceeding. However, the provision as adopted states: "The petition must be filed in the same proceeding in which the order, judgment or decree was entered but is not a continuation thereof." Therefore, the interpretation of section 72 of the 1933 Act, to the effect that a petition filed thereunder is in its nature a new suit, is also applicable to the Act as revised in 1955 and effective

January 1, 1956, and consequently to section 72 of rule 1 of the Municipal Court of Chicago. Unless the question of the sufficiency of the petition is properly preserved and brought to the attention of the trial court by a motion to strike and a ruling thereon, it is not available for consideration in a court of review.

■ The plaintiff here complains first that the petitioners failed to set up in their petition a meritorious defense. A mere statement that there is such a defense has been held to be insufficient. 23 I.L.P. Judgments, sec. 220. The plaintiff did not file a motion to strike. Through his attorneys he filed an answer to the petition, in which he denied the allegation with reference to a meritorious defense, and he further stated that the defendants have admitted liability.

In the affidavit of Pantaleo he stated that the affiant had a meritorious defense and that the total damage suffered by the plaintiff was less than $200. The plaintiff did not file a counteraffidavit, but in his answer he denied that statement in Pantaleo's affidavit. The plaintiff contends that it would be necessary for the defendants to show the basis of the allegation that the damage was less than $200. Under the law the question of the sufficiency of the petition and affidavit is not before us, but had it been, it might have been argued that the affidavit and petition raised a factual issue as to damages.

■ The trial court entered an order sustaining the petition of the defendants to vacate the judgment, and in that order the trial court stated that the cause came on for hearing and the court was fully advised in the premises. Even if we had the right to consider the question as to whether or not the statement as contained in the affidavit of Pantaleo was sufficient, under the law it must be presumed, inasmuch as the record before us does not contain a transcript of the proceedings at the hearing before the trial court on

the petition to vacate the judgment, that the court acted in conformity to law and had before it sufficient either in the way of admissions or otherwise to properly enter the order.

The second question raised by the plaintiff is as to whether or not the petition and affidavit were sufficient to show that the failure of the defendants to appear and defend the case was excusable. In Reid v. Chicago Rys. Co., 231 Ill. App. 58, the court holds that where the petition was answered all objections to the sufficiency of the petition were waived except the objection that the petition is so defective that it will not sustain the order of the court, citing in support of that rule Pittsburgh, C. C., & St. L. R. Co. v. Robson, 204 Ill. 254, 265, 68 N.E.468. It is undoubtedly true that prior to the decision of the Supreme Court in Ellman v. De Ruiter, 412 Ill. 285, 106 N.E.2d 350, it might have been urged that the petition and affidavit would not support the court's order inasmuch as it requires the exercise of the equitable power of the court.

Pantaleo in his affidavit states facts to support the allegation of diligence. It was stated that he, upon receipt of the summons in the case, turned it over to his insurance broker, who then turned the same over to the Mid-Union Indemnity Company, which company had insured the defendants, and that by the terms of the defendants' insurance policy the insurance company assumed the duty of defending them in case of an automobile accident involving one of their vehicles. On August 31, 1959, in the Circuit Court of Kane County, Illinois, an order was entered directing the Director of the Department of Insurance of the State of Illinois to take possession of the assets of the Mid-Union Indemnity Company for the purpose of rehabilitation. The affiant alleges that this fact was not known to him when he gave the summons to the insurance broker nor was he informed about the judgment until his

bank account was garnisheed. He further states that he had not been advised by the insurance company that it would not defend the cause of action which had been filed against him.

The plaintiff in his answer denies the allegation of Pantaleo with reference to turning the summons over to his insurance broker, who in turn gave it to the insurance company. An affidavit of one of the attorneys for the plaintiff was filed in the proceedings. In that affidavit he states that he had on November 13, 1959 been called by Pantaleo's insurance broker and told that the insurance company was in financial trouble and was under supervision of the Department of Insurance. The attorney stated that he had told the broker that a lawsuit had been filed and that no appearance or answer had been filed thereto; that the broker told him he would call him again, and on December 15, 1959 he was again called by the broker who told him that he had received authority from the insurance company to adjust the matter; and that at that time he informed the broker that a judgment had been entered.

Again, in default of a transcript of the proceedings at the hearing we must assume that the court had proof before it sufficient to support the allegations of the defendants with reference to Pantaleo's giving the summons to his broker and the latter's turning it over to the insurance company. The affidavit of the attorney for the plaintiff generally supports such contention inasmuch as he states that the broker informed him of the financial condition of the insurance company and also that the insurance company had authorized him to attempt to negotiate a settlement.

It is, however, the contention of the plaintiff that the petition and supporting affidavit are insufficient to support the order of the court inasmuch as the grounds therein set up, even if we assume them to be true, do not bring the case under section 72 of the

242

Practice Act as interpreted by the court in Ellman v. De Ruiter, supra, and Lichter v. Scher, 11 Ill. App.2d 441, 138 N.E.2d 66. The defendants rely on the fact that at the time the default judgment was entered the plaintiff knew the reason why the insurance company had not filed an appearance and fulfilled its contractual duty to defend its insured. The plaintiff failed to inform the court of that fact knowing that if he had done so a default would not have been entered in his favor.

In Schnable v. Tuma, 351 Ill. App. 486, at 491, 115 N.E.2d 574, the court said: "In the Ellman case our Supreme Court has extended broad discretionary powers to the trial court governing its decisions after a hearing on a petition in the nature of writ of error coram nobis." Where an excusable mistake is shown as a reason for not having made a defense in the proceeding wherein a default judgment had been rendered, such mistake is a sufficient showing of the exercise of reasonable diligence, and the court has the duty to exercise its discretion in granting the petition. Lichter v. Scher, 4 Ill. App.2d 37, 123 N.E.2d 161; McSwain v. Nash, supra.

In the instant case it is apparent that had the trial court known that the insurance company which carried defendants' insurance and which was obligated under its contract to defend this case had been taken over by the Director of Insurance of the State of Illinois, the judgment would not have been entered. We recognize the rule that where a person has been properly served with summons and through his own negligence or without any reasonable cause fails to appear and defend a suit brought against him, he has no right to insist that a default judgment entered against him be set aside. In the case before us an extraordinary situation had developed. The insurance company upon which the defendant relied to appear in court and defend the case brought against

him had some months before been taken over by the Director of Insurance. The defendants had no knowledge of that fact. Defendant Pantaleo gave his insurance broker the summons to deliver to the insurance company. It is apparent that the broker did deliver it. For the purpose of the delivery of the summons to the insurance company the broker was the defendants' agent. The agency terminated upon the broker's delivery of the summons. At the time when the broker was contacting the attorney for the plaintiff he was acting for the insurance company. It cannot be said that the default resulted from the negligence of the defendants' agent. The cases cited by the plaintiff in his brief are cases where the negligence was either that of the defendant or his agent and was not excusable. They are not applicable here.

Dalton v. Alexander, 10 Ill.App.2d 273, 135 N.E. 2d 101, is very similar to the case before us. In that case the defendant notified the insurance agent of the filing of the suit. The agent assured the defendant and his attorney that the insurance company would look after the defense of the action. The insurance company failed to take any steps whatsoever in the matter. A default judgment was entered against the defendant and within thirty days he moved to set the judgment aside. The plaintiff urged that the rule laid down in Ellman v. De Ruiter, 412 Ill. 285, 106 N.E.2d 350, only applied to judgments entered more than thirty days prior to the filing of the petition to vacate such judgment. The court says:

> "In Lichter v. Scher, 4 Ill. App.2d 37, where one of the defendants sought to have a judgment set aside on the ground that no service of summons had been made upon it, the Appellate Court applying the principle announced in the Ellman case, held that a motion supported by affidavits under Section 72 of the Practice Act averring as

244

it did that the defendants had not been served was addressed to the equitable powers of the court which would enable it to grant relief against a void judgment.

"Under varying factual situations, we find similar holdings in Schnable v. Tuma, 351 Ill. App. 486; Admiral Corp. v. Newell, 348 Ill. App. 180; Lane v. Bohlig, supra [349 Ill. App. 487].

"In the instant case, the defendants seek the same relief which the court in the Lichter case held might be granted on a motion made under Section 72 of the Practice Act. The only distinction between the two cases appears to be the fact that defendants filed their motion and sought to have the judgments vacated within 30 days after their entry."

In that case the court takes the view that under the factual situation presented to it there would be no doubt that the defendants, under the doctrine of the Ellman case, would be entitled to have the judgment vacated, and the court holds that the rule in the Ellman case also applies to motions brought within 30 days after the entry of the judgment. The court also states that the question as to whether such a petition should be denied because of its failure to show that the defendant was not guilty of inexcusable negligence depends on the facts appearing in the affidavits and that the term has no fixed legal meaning, the question being one of fact depending on the circumstances of each case. The court says, quoting from Busser v. Noble, 8 Ill. App.2d 268, 131 N.E.2d 637:

" 'We recognize that where a party is served with process and fails to act from negligence or without any reasonable excuse, he has no right to insist that he be permitted to defend. In the instant case defendant paid attention to this sum-

mons. He did not treat it with indifference. He did just what the ordinary individual would do. He delivered it to the agent of his insurance carrier. He thereafter made repeated inquiries concerning it and was assured his interests would be taken care of. His conduct was not inexcusable. The power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and the furtherance of justice. (31 Am. Jur. 279). The question in the instant case is whether defendant was reasonably justified under the circumstances in relying upon the promise or statements of his insurance agent. We think he was. His neglect to attend to the matter himself was not inexcusable.'

"We consider the above language applicable to the instant case. It is true that the defendant did not make repeated inquiries as to whether the Insurance Company had arranged for a defense of the action against him . . . ."

The court holds that under the rule laid down in Ellman v. De Ruiter, supra, the trial court should have vacated the judgment whether the motion was brought under section 72 or section 50(6). In Jansma Transport, Inc. v. Torino Baking Co., 27 Ill. App.2d 347, 169 N.E.2d 829, the court also calls attention to the fact that the service of the execution was delayed for the purpose of permitting the thirty-day period to expire, and says:

"While no duty is imposed upon a party or counsel to sue out an execution promptly in order to inform a defendant of a default within the thirty-day period, yet failure to do so is a circumstance which casts a cloud upon the entire proceeding. Ellman v. De Ruiter, supra, at page 293.

246

On a petition to vacate, the court may properly take it into account in appraising the worth of the defense to the petition."

In the case before us the execution was served on the thirty-first day after the judgment had been entered. The more recent rulings of our courts have tended to liberalize the right of a defendant, against whom a default was taken, to have it set aside where he shows an excusable mistake. The same plea for liberality was expressed a long time ago by Mr. Justice Blackstone in his Commentaries, Book 3, at p. 411, where he says:

" . . . [To the decisions of the court] such a narrowness of thinking was added, that every slip (even of a syllable or letter) was now felt to be fatal to the pleader, and overturned his client's cause. If they durst not, or would not, set right mere formal mistakes at any time upon equitable terms and conditions, they at least should have held that trifling objections were at all times inadmissible . . . .

"The precedents then set were afterward most religiously followed, to the great obstruction of justice and ruin of the suitors, who have formerly suffered as much by this scrupulous obstinacy and literal strictness of the courts as they could have done even by their iniquity."

In Widicus v. Southwestern Elec. Cooperative, 26 Ill. App.2d 102, 167 N.E.2d 799, which was a case concerning a motion brought within thirty days after the judgment was entered, the court lays down general principles with reference to rules concerning vacating default judgments, which are applicable whether the proceedings to vacate is by petition under section 72 or by motion under section 50(6) of the Practice Act. The court says:

"The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits.

" . . .

"We do not say that a defendant who fails to act by reason of negligence or without any reasonable excuse has a right to insist that he be allowed to defend. We do say that the record here shows that the defendant did not treat the court's command nor plaintiff's claim with indifference. Moreover, the record shows that the default was unnecessary to secure justice for the plaintiff and was a denial of justice to the defendant. It should, therefore, have been set aside."

In Lingerman v. Elgin, Joliet & Eastern Ry. Co., 24 Ill. App.2d 1, 163 N.E.2d 854, the court quotes with approval from Stephens v. Baker & Baker Roofing Co., 130 Cal. App.2d 765, 280 P.2d 39, which, quoting from Vartanian v. Croll, 117 Cal. App.2d 639, 256 P.2d 1022, says:

" 'There are relatively few reversals in this field. Of course, where there has been the entry of a default and the trial court sets it aside the appellate courts seldom reverse because of the strong public policy favoring trials on their merits.' "

In the instant case the insurance company had been taken over by the State. That fact was known to the plaintiff but not to the defendants. In the affi-

248

davit filed with the petition Pantaleo, one of the defendants, stated that an adjuster, after the accident, had contacted his office in order to obtain information relative to the facts concerning the said accident—a statement which the plaintiff in his answer neither admits nor denies but demands "stricter proof" thereof. In the affidavit of plaintiff's attorney he states that he was contacted twice by the broker, and that in the first conversation, which took place before the judgment was entered, the broker informed him that the insurance company had been taken over by the State. It would seem that it would have been better practice for the attorney to have informed the court of that fact at the time the default judgment was entered. Again quoting from Widicus v. Southwestern Elec. Cooperative, supra:

> "The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

249

The petition was heard by the same trial judge who had entered the default judgment. The judge knew whether or not he would have entered the judgment had he the information presented to him on the petition to vacate. From his ruling it is apparent that he would not have so acted. The court committed no error in sustaining the petition to vacate the judgment.

Under our view of the case it is not necessary to discuss other points raised in the briefs. The order of the Municipal Court of Chicago is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.